**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**CIVIL CASE NO. 1:10cv47**

| | |
|---|---|
| **DOVE AIR, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **FLORIDA AIRCRAFT SALES, LLC,** | ) |
| **and MARK H. O'BRIEN,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |
| **and** | ) |
| | ) |
| **FLORIDA AIRCRAFT SALES, LLC,** | ) |
| | ) |
| **Third Party Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **JOSEPH W. DUNCAN,** | ) |
| | ) |
| **Third Party Defendant.** | ) |

**MEMORANDUM OF DECISION
AND ORDER**

**THIS MATTER** is before the Court on the following motions:

1.    Florida Aircraft Sales, LLC's and Mark H. O'Brien's Motion for Summary

Judgment on Dove Air's Claims against Them [Doc. 21];

2. Florida Aircraft Sales, LLC's Motion for Summary Judgment on its Claims against Dove Air, Inc. and Joseph W. Duncan for the Amount Owed on the March 17, 2009 Promissory Note [Doc. 23];

3. Dove Air's Motion for Partial Summary Judgment on Counterclaim of Florida Aircraft Sales, LLC [Doc. 31]; and

4. Joseph W. Duncan's Motion for Partial Summary Judgment on Third-Party Complaint of Florida Aircraft Sales, LLC [Doc. 32].

## PROCEDURAL HISTORY

On February 16, 2010, Defendants Florida Aircraft Sales, LLC (FAS) and Mark H. O'Brien (O'Brien) removed this action from Henderson County Superior Court based on diversity jurisdiction.[1] [Doc. 1]. In the Complaint, the Plaintiff Dove Air, Inc. (Dove Air) alleged numerous transactions between it and FAS concerning airplanes, and based thereon asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. [Doc. 1-1].

FAS answered and counterclaimed against Dove Air alleging that Dove

---

[1] The Plaintiff is a North Carolina corporation with its principal place of business in Fletcher, North Carolina and FAS is a limited liability company with its principal place of business in Florida. [Doc. 1-1, at 1]. The sole member of FAS is O'Brien who is a Florida resident. [Doc. 3, at 1]. Third Party Defendant Duncan is a North Carolina resident. [Doc. 7].

Air defaulted on a promissory note that related to the airplane transactions, breached the implied covenant of good faith and fair dealing, committed common law fraud and breached various contracts in connection the aircraft sales, including have breached certain partnership agreements concerning the procurement and operation of two aircraft. [Doc. 5]. O'Brien filed an Answer but did not counterclaim. [Doc. 6].

FAS also filed a Third Party Complaint against Joseph W. Duncan (Duncan). [Doc. 7]. Duncan is the President of Dove Air. [Id., at 1]. FAS asserted claims against him for his personal default on the promissory note in question, breach of the implied covenant of good faith and fair dealing, and common law fraud and breach of contract in connection with the airplane transactions. [Id., at 2-12].

On December 20, 2010, before the conclusion of discovery, FAS and O'Brien filed the pending motion for summary judgment seeking dismissal of Dove Air's claims against them. [Doc. 21]. FAS also filed a separate motion seeking summary judgment in its favor on its claims against Dove Air and Duncan. [Doc. 23]. On February 1, 2011, the motions deadline, Dove Air and Duncan filed cross-motions for summary judgment as to portions of the Counterclaims and Third Party Complaint. [Docs. 31, 32].

## STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has observed, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003), certiorari denied 541 U.S. 1042, 124 S.Ct. 2171, 158 L.Ed.2d 732 (2004) (emphasis in original).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), *certiorari denied* 513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994), *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522, *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. Id.

A party opposing a properly supported motion for summary judgment

"may not rest upon the mere allegations or denial of [his] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial." Furthermore, neither "[u]nsupported speculation," nor evidence that is "merely colorable" or "not significantly probative," will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that "reasonable minds could differ" on a material point, then, regardless of "[a]ny proof or evidentiary requirements imposed by the substantive law," "summary judgment, if appropriate, shall be entered."

<u>Id.</u>

Nonetheless, in considering the facts for the purposes of a summary judgment motion, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## CONCEDED, ABANDONED AND UNPLEADED CLAIMS

**Conceded Claims**

At the outset it must be noted that the claims alleged in the Complaint bear relatively little resemblance to the current posture of this case, except that the suit still pertains to the sales of airplanes. Many, if not most, of the Plaintiff's claims as alleged in the Complaint have been abandoned or conceded. The facts pertinent to the disposition of the remaining claims are

much simpler than the convoluted circumstances set out in the pleadings.

Dove Air alleged claims stemming from a March 2007 transaction concerning an airplane, identified by its registration number as N867JC.[2] [Doc. 1-1, at 1]. In response to the motion for summary judgment, Dove Air conceded that summary judgment dismissing any claim in connection with N867JC is appropriate.[3] [Doc. 30, at 2]. Plaintiff also alleged claims stemming from certain transactions in October 2007 and June 2008 concerning airplanes N942DS, N118DA, and N425JF. In response to the motion for summary judgment, Plaintiff has conceded these claims as well. [Doc. 30, at 2]. The June 2008 portion of those transactions also gave rise to claims asserted by Dove Air concerning N173AA and N85HW, which have likewise been conceded by Dove. [Doc. 30, at 2]. In addition, the June 2008 transaction formed the basis for certain claims set forth in the Complaint concerning airplanes N501SS and N171EC. In their Answers to Defendants' First Set of Interrogatories, Dove Air and Duncan stated that they are "not continuing to pursue any claims regarding these aircraft [N501SS and N171EC]" as related to repairs made prior to delivery (the basis of the claim

---

[2]The parties agree that the registration number for an airplane is basically the same thing as a license plate on an automobile and is used to identify a civil aircraft. [Doc. 22, at 3 n.1; Doc. 30, at 3 n.2].

[3]Dove Air did not limit its concession to any particular cause of action. The concession therefore is as to each of the three claims asserted in the Complaint.

alleged in the Complaint). [Doc. 36-6, at 4]. Moreover, in Dove Air's brief responding to the motion for summary judgment, there is no mention of these two planes in connection with expenses incurred to prepare them for resale. [Doc. 30].

The Complaint contains an allegation that at some undisclosed time FAS hired Dove Air to find a Gulfstream airplane to replace N202PX. [Doc. 1-1, at 3]. Dove Air allegedly incurred expenses in connection with the efforts made to find such a plane for which it sought reimbursement. [Id.]. Duncan testified during his deposition that he was constantly looking for planes for several customers and never told FAS that he would charge for his time or expenses. [Doc. 22-5, at 47-48]. In response to the motion for summary judgment, Dove Air conceded that summary judgment dismissing this claim is appropriate. [Doc. 30, at 2-3].

With regard to all of the claims mentioned above, since the Plaintiff has conceded that summary judgment in favor of the Defendants is appropriate, these claims will not be discussed further and summary judgment thereon will be granted.

**Abandoned Claim**

With regard to airplane N501SS, Dove Air asserted an additional claim in its Complaint concerning whether FAS had stripped the plane of certain

parts prior to its delivery to Dove Air. FAS moved for summary judgment as to this claim, but Dove Air made no response thereto.

> A party asserting that a fact ... is genuinely disputed must support the assertion by:
>
> (A)    citing to particular parts of materials in the record, including depositions, documents, ... affidavits or declarations, ... admissions, interrogatory answers, or other materials; or
>
> (B)    showing that the materials cited [by the movant] do not establish the absence ... of a genuine dispute[.]

Fed.R.Civ.P. 56(c)(1).

If a party fails to respond and present a competing forecast of evidence, the Court may consider the fact undisputed for purposes of the motion and may grant summary judgment if appropriate. Fed.R.Civ.P. 56(e).

> [T]he party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has met that burden, the non-moving party must come forward and demonstrate that such an issue does, in fact, exist. A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of the pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial."

Bouchat, 346 F.3d at 522 (citations omitted).

In its motion, the Defendant presented a forecast of evidence on this issue. FAS's owner, O'Brien, stated in a declaration that neither he nor anyone affiliated with FAS knew that parts had been removed from N501SS

when the parties were negotiating for the transfer of the plane to Dove Air. [Doc. 22-11, at 2]. He also stated that FAS and he did not learn that parts had been removed from the plane until he delivered possession of the plane to Dove Air. [Id.]. Dove Air's president, Duncan, testified that while N501SS was in a hanger at an airplane repair business known as Logos at the Fort Lauderdale Executive Airport, an airplane mechanic named Nick (LNU) took parts off of it and used them as replacement parts for another plane of the same manufacture. [Doc. 22-5, at 37]. The mechanic admitted doing this to Duncan but promised to replace them with new parts. [Id.]. Nick was the owner of Logos and needed the parts for another customer's plane over the weekend. [Id., at 37-38]. Duncan testified that he did not know whether Dove Air or FAS owned the plane at the time that this occurred. [Id.]. He also testified that he "had no idea" when FAS or O'Brien learned that the parts had been taken from the plane. [Id.]. Duncan admitted that he did not call the police, the Federal Aviation Administration or the Federal Bureau of Investigation because Nick "said he was putting the parts back together." [Id., at 39]. Duncan agreed that he was not accusing FAS or anyone associated with FAS of removing the parts. [Id.]. Nick replaced some parts but not all of them. [Id.]. Duncan and Dove Air never billed Nick or Logos for the parts, and never pursued them in any manner because "[h]e doesn't have any money."

[Id., at 39-40]. In fact, Nick and Logos were "broke." [Id.]. Duncan testified that the plane was flown back to Asheville but no one at Dove Air ever inventoried the plane to see what parts were missing. [Id., at 40-41].

In light of Dove Air's failure to present any forecast of evidence in opposition to the motion on this claim, the Court will accept the forecast of evidence of FAS as uncontroverted. Neither Nick (LNU) nor Logos are parties to this action. Dove Air argues no basis on which FAS would be liable for any theft on perpetrated by Nick or Logos. Therefore, in accord with Rule 56(e)(3) the Court will grant the Defendants' motion for summary judgment as to this claim.

**Unasserted Claim**

In its response to the motion for summary judgment, Dove Air claims that it is entitled to recover its costs and expenses incurred after the contract for the sale of airplane N4415W to FAS. [Doc. 30, at 12]. There is no allegation in the Complaint concerning this plane. [Doc. 30]. Although the allegations of the Complaint make specific reference to several other airplanes (as identified herein), there is no allegation in the Complaint concerning this plane. It is not mentioned at any point therein.

A defendant should have "fair notice of what [a] plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct.

99, 2 L.Ed.2d 80 (1957), <u>abrogated on other grounds by</u> <u>Bell Atlantic Corp. V.</u>

<u>Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "[D]espite

the liberal pleading rules outlined by the Supreme Court, plaintiffs may not

raise new claims without amending their complaints after discovery has

begun." <u>Barclay White Skanska, Inc. v. Battelle Memorial Institute</u>, 262

Fed.Appx. 556, 563 (4th Cir. 2008). "A plaintiff may not amend [the] complaint

through argument in a brief opposing summary judgment." <u>Gilmour v. Gates,</u>

<u>McDonald & Co</u>., 382 F.3d 1312, 1315 (11th Cir. 2004). The Court therefore

strikes the portion of the Plaintiff's response to the motion for summary

judgment making reference to airplane N4415W and any potential claim that

the Plaintiff may have had in relation thereto which was not asserted in this

action.


## FACTUAL BACKGROUND

As to the remaining claims, the allegations and forecasts of evidence

are as follows.

In March 2007, Dove Air and FAS agreed to an exchange of airplanes

in which Dove Air transferred to FAS a Gulfstream airplane, registration

number N695DA. [Id.]. The written Aircraft Purchase Agreement entered into

by the parties shows that N695DA was valued at $1,100,000.00 for the

purposes of the exchange. [Id.].  Dove Air alleged in the Complaint that it is entitled to recover from FAS the value of the "repairs, maintenance, and/or inventory carrying costs for ... N695DA ... to facilitate receipt [thereof] by FAS and ... resale of [N695DA] to recoup its investment in that aircraft." [Doc. 1-1, at 1].  In other words, Dove Air claims that it was entitled to receive as part of the agreement the agreed value of the airplane *plus* all expenses it incurred in repairing or maintaining N695DA to the point of consummating the sale and transferring the plane. [Id.].

FAS moved for summary judgment noting that the written contract between the parties provided that the airplane was traded in "as is" condition and that there were no other agreements between the parties.  [Doc. 22, at 4]. Thus, there was no reason for Dove Air to have undertaken such repairs and no basis on which Dove Air was entitled to payment.  In response, Dove Air did not address the claim stated in the Complaint.  Instead, Dove Air now asserts that the claim for repairs stems from work done by it after the sale pursuant to an oral agreement "for services performed *after* the contracts were executed *and beyond what the contracts either called for or contemplated*."  [Doc. 30, at 11] (emphasis in original).  Robert Hettinger, Dove Air's controller, has provided a statement in which he itemized expenses totaling $332,492.08. [Doc. 30-5, at 1].  Three of the entries reflect that they

concern work performed prior to the March 8, 2007 contract. [Doc. 30-5, at 3].
The remainder reflect work that was performed thereafter. [Id.].

The parties' contract contains a provision that "There are no other agreements written or oral which pertain to the sale of the aircraft." [Doc. 22-4, at 3]. It also contains a provision that the contract "shall not be modified or amended except by an instrument in writing or fax agreed to by duly authorized representatives of the parties." [Id.]. Duncan, who signed the contract on behalf of Dove Air, testified that he understood those terms to mean "exactly what [they said]." [Doc. 30-5, at 9]. He was unaware of any written agreements which modified that contract. [Id., at 12]. It is also undisputed that the Complaint does not allege that the repairs were for work done after closing on the sale of the airplane.

In its response to the motion for summary judgment, Dove Air did not make any argument or provide any evidence with regard to the claim that was pleaded for repairs and maintenance made to N695DA prior to the sale of the aircraft. [Doc. 30].

The facts surrounding the claim regarding airplane N202PX are very similar. The parties entered into a contract by which Dove Air was to sell this

airplane to FAS.[4]  Dove Air's claim in the Complaint is for the cost of "repair,

maintenance, and/or inventory carrying costs in connection with preparing for

delivery the aircraft[.]" [Doc. 1-1, at 2].  The contract contained a provision that

the "aircraft is being sold on an as is basis, and there are no warranties which

exten[d] beyond the description of the aircraft." [Doc. 22-8, at 2].  It also

contained a provision that the contract could "not be modified or amended

except by an instrument in writing or fax agreed to by duly authorized

representatives of the parties." [Id., at 3].  This transaction is slightly different

from the previously mentioned contract in that it was a "flip sale" in that Dove

Air actually procured the aircraft from Plains Exploration & Production

Company (Plains Exploration) immediately before the closing in order to sell

it to FAS, and FAS then leased it back to Plains Exploration.

Just as with the N695DA transaction, Dove Air responded to the motion

for summary judgment by arguing that notwithstanding the allegations in the

Complaint, the claim for repairs is for work done by it after the sale pursuant

to an oral agreement "for services performed *after* the contracts were

---

[4] The Court notes that N202PX is also the subject of Count Five of FAS's Counterclaims against Dove Air.  That appears to arise, however, from a different transaction between the parties.  The parties do not dispute that Dove Air's claim against FAS centers on the sale of the airplane by Dove Air to FAS (even though the sales contract [Doc. 22-8] does not appear to have been signed).  The Counterclaim centers on a partnership between FAS and Dove Air for the subsequent operation of this plane.  The parties do not dispute - at lest for the purposes of summary judgment - the existence of that partnership. [Doc. 40 at 12].

executed *and beyond what the contracts either called for or contemplated*." [Doc. 30, at 11] (emphasis in original). Robert Hettinger, Dove Air's controller, has provided a statement in which he itemized expenses totaling $48,266.62 incurred after N202PX was sold. [Doc. 30-5, at 2]. The itemized statement, however, shows that the expenses are for fuel and hanger costs, insurance, an inspection (the cost of which was $20,000.00), salaries and expenses for pilots, an unidentified type of title service and payroll expenses in connection with N202PX. [Doc. 30-5, at 13]. Only one item is shown for repair or maintenance: "Reimburse for payment Belle Aircraft Maintenance 202PX" in the sum of $72.03. [Id.]. Dove Air claims that in a declaration provided by Duncan [Doc. 33-3] that "FAS contracted and agreed to pay for the services for which Dove Air seeks contractual reimbursement in this lawsuit." [Doc. 30, at 11]. That declaration, however, does not contain any information concerning repairs made to N202PX. [Doc. 33-3].

In its response to the motion for summary judgment, Dove Air did not make any argument or provide any evidence that the repairs and maintenance made to N202PX were undertaken in conjunction with or pursuant to the contract for the sale of the aircraft. [Doc. 30].

As very briefly outlined above, the tangle of transactions between Dove Air and FAS was extensive, and their disputes numerous. This led the parties

to enter into a "Settlement Term Sheet" in March 2009. As part of that settlement, the parties resolved many of their differences and in addition FAS agreed to sell to Dove Air two airplanes: the N501SS for $700,000 and the N171EC for $150,000. Dove Air was to pay for these two planes by executing a promissory note in the original amount of $850,000. Duncan individually joined in the execution of the Note. [Doc. 22-7 at 3-4]. It contained a provision for payment by installments on March 31, 2009; April 30, 2009 and May 15, 2009. [Id.]. It also contained a provision that failure to enforce rights and remedies upon default did not constitute a waiver thereof. [Id.]. It is undisputed that Dove Air and Duncan did not make payment in full as provided for by the installment payment schedule.

Duncan testified in his deposition that he understood his obligations under the terms of the Settlement Term Sheet and Promissory Note as "[t]o either get [FAS] clear title to [N501SS] or pay [FAS] the money." [Doc. 24-3, at 2]. He also testified that he thought the terms of the Promissory Note were fair and that he understood what he was doing. [Id., at 6]. When asked what Duncan received in exchange for signing the Promissory Note, he stated that it was an agreement between "the two of us because I couldn't give him title to an airplane I had sold him." [Doc. 35-3, at 8]. Duncan began making payment on the note by transferring title to O'Brien of two cars and a boat.

[Id.].  Duncan believes those items were worth $300,000.00 and sought a credit in that amount against the balance. [Doc. 24-3, at 5].  He does not, however, have anything in writing which states that the parties agreed on that amount as a credit.[5] [Id.].  Duncan does not dispute that the note has not been paid in full. [Id., at 7].  Instead, he claims that the amounts owed by FAS to Dove Air which are the subject of this lawsuit exceed the balance due on the note. [Id.].  He does not dispute the validity of the note; he simply believes the balance due thereon should be offset by the amount Dove Air claims FAS owes it. [Id.].  Indeed, the claim stated in the Complaint in connection with the Promissory Note is solely for this credit. [Doc. 1-1, at 3].

In response to FAS' motion for summary judgment on its claim on the promissory note, Dove Air now claims there was a lack of mutual assent in the making of the note because FAS never intended to enforce it.  [Doc. 30, at 6].  Four months after giving his deposition, Duncan provided a sworn declaration in opposition to FAS' motion for summary judgment. [Doc. 30-4].  In contrast to his deposition testimony reflected above, Duncan stated in the declaration that O'Brien told him that there was never any intent to enforce the Settlement

---

[5]FAS states that for purposes of summary judgment only, it would concede that a $300,000 credit is due. [Doc. 24, at 10 n.1].  Because of this concession, FAS and O'Brien did not seek summary judgment in its favor dismissing the claim for credit in the Complaint.

Term Sheet and Promissory Note. [Id., at 5]. He also stated in the declaration that "But for Mr. O'Brien's representations as to his intention regarding the documents, I never would have signed them." [Id., at 6].

To support this claim, Dove Air and Duncan point to an incident which occurred after they defaulted on the installment payments provided for in the promissory note. On June 18, 2009, a demand letter was sent by FAS' attorney. [Doc. 30-2, at 26]. O'Brien testified that on the day it was delivered to Duncan, he happened to be in Duncan's office. [Doc. 30-2, at 16]. O'Brien and Duncan had been attempting to resolve the outstanding balance due to FAS. [Id.]. O'Brien testified that the parties had made progress until Duncan happened to open the demand letter and upon reading it, became angry. [Id., at 17]. O'Brien had not authorized his attorney to send the letter and in order to maintain the "handshake agreement" "to g[i]ve [Duncan] one more chance," O'Brien called his attorney and told him to withdraw the demand letter. [Id.]. That was done on June 22, 2009. [Doc. 30-2, at 28].

In addition to the claim that there was no mutual assent, Dove Air also claims there was no consideration for the Settlement Term Sheet and Promissory Note. Duncan stated in his declaration that:

> [d]espite the representation in the Settlement Term Sheet that N171EC would be sold to Dove Air, it never was. Rather, using Edd Conn as a broker, FAS sold the airplane for cash and a trade

aircraft. According to Dove Air's records, Dove Air has received only $110,000 on account of this aircraft. The amount attributed to it by the Settlement Term Sheet is $150,000.

[Doc. 30-4, at 6].

Despite this statement made by Duncan in a declaration prepared to oppose summary judgment, FAS produced an Aircraft Bill of Sale, AC Form 8050-2, Federal Aviation Administration, showing that on August 11, 2009, *Dove Air, Inc.* sold N171EC to Anthony Quadrani of Sagola, Michigan. [Doc. 35-1]. The bill of sale was signed by Duncan. [Id.].

Dove Air also argues that the Settlement Term Sheet does not contain warranty disclaimers and that N501SS is inoperable. [Doc. 30, at 9]. As a result, it argues there was no consideration for the sale back to Dove Air of the plane.

## DISCUSSION

### I. Dove Air's Claims for Repairs

As outlined above, Dove Air asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing and common law fraud in relation to the repairs that it undertook to airplanes N695DA and N202PX for which FAS did not pay.

### A. Breach of Contract Claims

In opposition to the motion for summary judgment, Dove Air claimed that

its breach of contract claim is related to "expenses for services requested by FAS, and for which FAS agreed to pay, *after* the written contracts were executed and *after* performance was completed under the contracts." [Doc. 30, at 15]. The purported services relate to airplanes N695DA and N202PX.[6] [Id.]. Dove Air does not dispute that this is a claim different from the one asserted in the Complaint. In fact, in response to the motion, Dove Air did not address FAS' argument that this claim had never been alleged in the Complaint. [Id., at 15-16].

Dove Air cannot constructively amend its Complaint by asserting an argument in a responsive brief. "[T]his claim was not raised in [the] complaint but, rather, was raised in [the] response to the defendants' motions for summary judgment and, as such, was not properly before the court." Fisher v. Metro. Life Ins. Co., 895 F.2d 1073, 1078 (5th Cir. 1990). "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a). A plaintiff may not amend [its] complaint through argument in a brief opposing summary judgment." Gilmour, 382 F.3d at 1314-15; accord, Cloaninger *ex rel.* Estate of Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009) ("Cloaninger's

_____

[6]Although airplane N4415W is also referenced in Dove Air's brief, this plane, as noted above, is not mentioned in the Complaint.

current malicious prosecution claim is therefore not the one presented in his complaint. ... [A] plaintiff may not raise new claims after discovery has begun without amending his complaint."  Claim dismissed on summary judgment.); Wahi v. Charleston Area Medical Center, Inc., 562 F.3d 599, 617 (4th Cir. 2009), certiorari denied 130 S.Ct. 110, 175 L.Ed. 991 (2010) ("[A] plaintiff may not raise new claims after discovery has begun without amending his complaint."); Swann v. Source One Staffing Solutions, __ F.Supp.2d __, 2011 WL 761479 **10 (E.D.N.C. 2011) ("Swann may not, however, use her memorandum in opposition to Source One's motion for summary judgment to amend her complaint."); Bassi & Bellotti S.p.A. v. Transcontinental Granite, Inc., 2011 WL 856366 **10 (D.Md. 2011) ("A party cannot raise a new claim through argument on summary judgment.").

It must be noted that Dove Air has not merely changed its theory of recovery, but rather has changed the *facts* upon which it seeks to recover. The action filed by Dove Air asserts claims based on contracts of sale whereby it incurred repair costs in order to effectuate the sale ("*The sale* . . . necessitated Dove Air's incurring repairs, maintenance, and/or inventory carrying costs for [the airplanes]" [Doc. 1-1 at 1] (emphasis added)).  Dove Air now seeks to advance claims based upon two consummated sales, followed by wholly new and unpleaded oral agreements whereby FAS allegedly sought

21

for Dove Air to repair the airplanes. The Complaint gives no hint that such claims are being asserted. For these reasons Dove Air's new argument cannot sustain these claims.

The Court therefore grants summary judgment to FAS and O'Brien as to the breach of contract claims stemming from allegations of post-contract conduct not alleged in the Complaint.

**B.    The claim for breach of the implied covenant of good faith and fair dealing.**

The Complaint alleges, in support of the claim for breach of the implied covenant of good faith and fair dealing, that

> [e]very North Carolina contract, including the agreements to which the preceding [breach of contract] count refers, contains an inherent obligation of the parties to the contracts to deal with one another fairly and in good faith.

> FAS or O'Brien, or both, by failing to pay, as promised, for expenses incurred by Dove Air at their request and with their agreement, and by failing to do so in a manner calculated to mislead Dove Air as to the nature and validity of both the expenses the agreement of FAS or O'Brien, or both, to pay them, have failed to deal with Dove Air as a contractual party fairly and in good faith.

[Doc. 1-1, at 4].

This Count incorporates by reference "all preceding averments" and allegations of the Complaint. [Id.]. It therefore asserts only a claim that FAS failed to pay for the expenses purportedly incurred in connection with the

sales or trades of airplanes, not one related to any unpleaded agreements. Dove Air's current argument, however, is that FAS breached an obligation of good faith inherent in an oral agreement that Dove Air has never pleaded. Dove Air may not amend its Complaint in a brief responsive to the motion for summary judgment in order to assert claims regarding unpleaded oral contracts or the obligation of good faith that may arise therefrom.

Even if Dove Air had stated a claim based on a contract to perform services subsequent to the fact of the sale, it would fare no better. In the responsive brief, Dove Air claims that

> [a] reasonable juror, considering the entirety of FAS's behavior recited in this memorandum, including its repeatedly requesting Dove Air's performance of services for which it refused to pay, its essentially duping Dove Air and Duncan into a promissory note that it intended only as last-minute leverage in the event that it could not otherwise reach an agreement with Dove Air, and their manipulation of liens and title with respect to the Cherita [yacht] and the Hawker [N118DA] aircraft could conclude that FAS has acted in bad faith.

[Doc. 30, at 16]. Virtually everything cited in this argument is outside of the oral agreement Dove Air now belatedly seeks to assert. Dove Air conceded that summary judgment is proper concerning airplane N118DA, the so-called "Hawker" plane. [Doc. 30, at 2]. It may not, therefore, resurrect a claim by re-casting it in the guise of breach of an implied covenant. Moreover, there is no allegation in the Complaint concerning liens or titles related to the yacht or

N118DA and Dove Air may not amend its Complaint through its summary judgment response to assert such new claims. Furthermore, there is no allegation in Count II, the breach of implied covenant count, related to the Promissory Note. [Doc. 1-1 at 4]. The allegations relate solely to expenses incurred in connection with the repairs claimed to have been performed in accord with the sales contracts. [Id.]. A claim based on the covenant of good faith and fair dealing is not simply an open door through which a plaintiff can try to prove that the defendants are "bad people," as Dove Air appears to argue.

Although "the covenant of good faith and fair dealing is implied in a contract, a claim for breach of that covenant typically is 'part and parcel' of a claim for breach of contract." Ada Liss Group (2003) v. Sara Lee Corp., 2009 WL 3241821 **13 (M.D.N.C. 2009), citing Murray v. Nationwide Mut. Ins. Co., 123 N.C. App. 1, 19, 472 S.E.2d 358, 368 (1996), review denied 345 N.C. 344, 483 S.E.2d 172 (1997); Thomas, Lord of Shalford v. Shelley's Jewelry, Inc., 127 F.Supp.2d 779, 787 (W.D.N.C. 2000), affirmed 18 Fed.Appx. 147 (4th Cir. 2001). Absent a breach of contract, there is no cause of action for breach of an implied covenant of good faith and fair dealing in connection with that contract. Id. The Court having concluded that there is no surviving claim for breach of contract, either as to pre-contract or post-contract dealings, there

can be no claim for breach of the implied covenant of good faith and fair dealing. Ada Liss Group v. Sara Lee Corp., 2010 WL 3910433 (M.D.N.C. 2010), citing Meineke Car care Centers v. RLB Holdings,LLC, 2009 WL 2461953 **11 (W.D.N.C. 2009), reversed on other grounds, 2011 WL 1422900 (4th Cir.2011) ("North Carolina courts ... do not consider breach of good faith claims independently from breach of contract claims unless there is a special relationship between the parties.").[7]

## C.   The claim for unjust enrichment.

The third count of the Complaint incorporates the previous allegations and asserts that

> Dove Air has expended effort and expense on behalf of FAS or O'Brien, or both, in the marketing, buying, selling, repairing, maintaining, and carrying in its inventory aircraft from the ultimate sale or resale of which FAS or O'Brien, or both, benefitted.
>
> Because FAS or O'Brien, or both, have benefitted from Dove Air's efforts and expenses and has not remunerated [sic] or reimbursed Dove Air for its efforts and expenses, FAS or O'Brien, or both, have been enriched unjustly by Dove Air's efforts and expenses.

[Doc. 1-1, at 5].

The Complaint, therefore, references the expenses incurred in connection with the buying and selling of aircraft. As with the breach of contract and implied covenant of good faith claims, Dove Air now argues in

---

[7] Dove Air alleges no such relationship here.

response to the motion that this claim pertains to services rendered *after* the consummation of the parties' contracts in connection with N695DA, N202PX and N4415W. [Doc. 30, at 17].   As such, Dove Air's position is wholly dependent upon the adoption of a factual basis for the claim that is different in substance from that alleged in the Complaint.   As stated above, such a constructive amendment is not allowed to resurrect a failed claim.  For these reasons FAS is entitled to summary judgment on these claims.

## II.  FAS's Claim on the Promissory Note

FAS asserted a Counterclaim against Dove Air and a Third Party Claim against Duncan on the Promissory Note.  FAS seeks summary judgment on that claim, [Doc. 23], and Dove Air and Duncan likewise seek summary judgment in their favor on this claim. [Docs. 31, 32].

This claim originally arises from the June 2008 Aircraft Trade Agreement between the parties, wherein Dove Air agreed to transfer certain aircraft to FAS and FAS agreed to transfer certain aircraft to Dove Air for no additional consideration. [Doc. 22-10].  Dove Air was unable to comply with the terms of the agreement, because it failed to deliver its planes free of liens. [Doc. 22-7, Doc. 24-3 at 2, Doc. 35-3 at 8].   The parties reached a settlement which, *inter alia*, resolved the failure of Dove Air to perform in accord with the terms of the

Aircraft Trade Agreement. As part of that settlement, Dove Air agreed to pay for the aircraft that FAS had previously transferred to Dove Air by way of the Promissory Note. The purchase price of one aircraft was set at $700,000 and the other at $150,000, so the Promissory Note was in the face amount of $850,000.

Dove Air disputes is liability on the Promissory Note arguing that 1) it was released, 2) that there was no mutual assent to the Note, 3) that there was a failure of consideration as to the Note, and 4) that there is a dispute as to the amount owed on the Note. [Doc. 30 at 5-10].

### A. Release

The 2008 Aircraft Trade Agreement contains a provision that reads:

Both parties agree that the [airplanes being exchanged] are being exchanged on a no additional consideration basis, and represent this trade transaction in its entirety. Both Purchaser and Seller agree to a full release of any and all obligations, *or potential obligations*, from Seller to Purchaser and from Purchaser to Seller, regarding all aircraft referenced in this Aircraft Trade Agreement.

[Doc.22-10].

Dove Air, in an argument that contains no citations to any authority, argues that the provision releasing "potential obligations" between the parties in 2008 serves to release Dove Air from liability on the Promissory Note that was executed by Dove Air *the following year*. Inherent in Dove Air's argument

is the assertion that the 2008 release released it from performing in accord with the terms of the Aircraft Trade Agreement *that contains the release itself* and relieved it if delivering good title to the aircraft - or delivering the aircraft at all; and that when Dove Air failed to provide title that it had no obligation to re-pay FAS for the aircraft.  Hence, Dove Air argues, its obligation under the Promissory Note is a nullity.  This argument is without merit.

> A release ordinarily operates on the matters expressed therein which are already in existence at the time of the giving of the release.  Accordingly, demands originating at the time a release is given or subsequently, and demands subsequently maturing or accruing, are not as a rule discharged by the release unless expressly embraced therein or falling within the fair import of the terms employed.

Financial Services of Raleigh, Inc. v. Barefoot, 163 N.C.App. 387, 393, 594 S.E.2d 37 (2004) (citations omitted).  The obligation to transfer clear title to the aircraft was not released in the same agreement by which Dove Air was obligated to deliver the aircraft.  If it were, the entire Aircraft Trade Agreement would have been meaningless.

In addition, on March 17, 2009, the parties entered into a subsequent agreement (the Settlement Term Sheet) pursuant to which Dove Air purchased two of the aircraft (N501SS and N171EC) from FAS.  After signing the Settlement Term Sheet and Promissory Note, both of which recited consideration, Duncan made payments on the note.  He testified that the

agreement was a fair and reasonable transaction made by the parties because Dove Air and he was unable to deliver clear title to one of the planes. This conduct was either a substitution of the contract between the parties or an entirely new contract the terms of which applied to the transaction at hand. Medical Staffing Network, Inc. v. Ridgway, 194 N.C.App. 649, 653, 670 S.E.2d 321 (2009)(a previous valid obligation followed by the agreement of the parties to a new contract and extinguishment of the old contract establish substitution or novation); Westport 85 Ltd. Partnership v. Casto, 117 N.C.App. 198, 204-05, 450 S.E.2d 505 (1994).

Dove Air argues, however, that "A reasonable juror easily might conclude that this release precludes FAS from enforcing the Promissory Note, a 'potential obligation' concerning two of the seven [exchanged] aircraft." [Doc.30 at 6]. The construction of a contract, however, is not a question of fact for the jury. Except when a latent ambiguity is present in the agreement (and Dove Air points to none here) "contract interpretation is a matter of law." Shelton v. Duke Univ. Health Sys., 179 N.C. App. 120, 122, 633 S.E.2d 113, 115 (2006); Lane v. Scarborough, 284 N.C. 407, 410, 200 S.E.2d 622, 624, (1973). Dove Air makes no argument regarding any ambiguity in the agreement, latent or patent or otherwise, which could potentially create any issue of fact with regard to the construction of the agreement.

The argument of Dove Air regarding the release is completely without merit and liability on the Promissory Note cannot be avoided on this ground.

## B.  Mutual Assent

Next, Dove Air and Duncan claim no mutual assent existed to support the Promissory Note, and it is therefore unenforceable.  "Mutual assent is normally established by an offer by one party and an acceptance by the other, which offer and acceptance are essential elements of a contract."  Creech v. Melnik, 347 N.C. 520, 527, 495 S.E.2d 907 (1998).

In support of this argument Dove Air and Duncan rely on the declaration of Duncan provided in opposition to the current motion.  As regards the element of mutual assent, however, that declaration stands in sharp contrast to Duncan's deposition testimony from four months earlier.  In September 2010, Duncan testified that he clearly understood his obligations under the terms of the Settlement Term Sheet and Promissory Note as "[t]o either get [FAS] clear title to [N501SS] or pay [FAS] the money." [Doc. 24-3, at 2].  He also testified that he agreed with the terms of the Promissory Note which he thought were fair and that he understood what he was doing. [Id., at 6].  When asked what Duncan received in exchange for signing the Promissory Note, he stated that it was an agreement between "the two of us because I couldn't

give him title to an airplane I had sold him." [8] [Doc. 35-3, at 8].  Duncan began

making payment on the note by transferring title to two cars and a boat. [Id.].

Duncan believes those items were worth $300,000.00 and sought a credit in

that amount against the balance.  [Doc. 24-3, at 5].  At no point did Duncan

deny that he owed the money pursuant to the note; it was merely his position

that the money which FAS owed him for post-contract repairs exceeded the

balance due on the note after a credit for the $300,000.00. [Id.].

In Duncan's sworn declaration in January 2011, however, he testified

that O'Brien told him there was never any intent to enforce the Settlement

Term Sheet and Promissory Note. [Doc. 30-4, at 5].  He also stated in the

declaration that "But for Mr. O'Brien's representations as to his intention

regarding the documents, I never would have signed them." [Id., at 6].  This

statement, presented to the Court in response to the motion for summary

judgment, is inconsistent with Duncan's deposition testimony.  He never

testified in his deposition that he did not assent to the Promissory Note or its

terms.  On the contrary he freely admitted his assent.  "[A] party cannot create

a triable issue in opposition to summary judgment simply by contradicting his

deposition testimony with a subsequent affidavit."  <u>Hernandez v. Trawler Miss</u>

_____

[8] This statement by Duncan also defeats Dove Air's argument that there was no
consideration for the note.  See pp. 34-36, <u>infra</u>.

<u>Verti Mae, Inc.</u>, 187 F.3d 432, 438 (4th Cir. 1999); <u>Webb v. Starbucks Corp</u>., 2008 WL 4891106 **6 (W.D.N.C. 2008) (excluding from consideration contradictory affidavit submitted in opposition to summary judgment).

Duncan also cites O'Brien's instruction to his attorney to rescind the demand letter as proof that O'Brien never intended to enforce the Promissory Note. O'Brien did indeed testify that he and Duncan had been attempting to resolve the outstanding balance. [Doc. 30-2, at 16]. O'Brien testified that the parties had made progress until Duncan happened to open the demand letter and upon reading it, became angry. [<u>Id</u>., at 17]. O'Brien had not authorized his attorney to send the letter and in order to maintain the "handshake agreement" "to g[i]ve [Duncan] one more chance," O'Brien called his attorney and told him to withdraw the demand letter. [<u>Id</u>.].

This exchange, however, in no way shows a lack of mutual assent at the time the note was executed. Giving Dove Air "one more chance" manifests an intent *to enforce* FAS's rights unless Dove Air and Duncan performed in accord with their obligations on this final opportunity. Moreover, the Note contains an express provision that failure to exercise rights and remedies under the note would not constitute a waiver thereof. [Doc. 22-7, at 4]. It also contains a provision that FAS "shall have the right, without notice, to deal in any way, at any time, with [Dove Air and Duncan] under this Note without

waiving any rights the holder of this Note may have hereunder or by virtue of the laws of the State of North Carolina[.]" [Id.]. "A court must enforce a contract as agreed between the parties and not make a new contract for them." F.D.I.C. v. Prince George Corp., 58 F.3d 1041, 1050 (4th Cir. 1995). At the time the parties entered into the Promissory Note, they agreed that any failure to enforce rights upon default would not waive those rights. The fact that O'Brien did precisely that does not invalidate the parties' mutual assent at the time of execution. Barker v. Agee, 93 N.C.App. 537, 541-42, 378 S.E.2d 566 (1989), affirmed in part, reversed in part on other grounds 326 N.C. 470, 389 S.E.2d 803 (1990).

For these reasons, the Court concludes as a matter of law that there is no genuine issue as to any material fact concerning whether Dove Air and Duncan assented to the Promissory Note and their liability thereon cannot be avoided on that ground.

### C. Failure of Consideration

Dove Air next claims that it is not obligated on the Promissory Note because of a failure of consideration. Dove Air argues that consideration has failed in two respects. First, it should have received $150,000 credit for one of the airplanes at issue, but it only received $110,000. Second, another airplane at issue was delivered to Dove Air, but it is in such poor condition as

to be worth only about $300,000 rather than the $700,000 allocated to it under the Settlement Term Sheet. [Doc. 30 at 9]. Dove Air does not dispute that it received considerable value in the transaction, namely the $110,000 credit, the second plane in its allegedly damaged condition and the resolution of the claims that were settled by the March 2009 agreement. Dove Air only argues that it did not get *all* it bargained for.

"[T]he parties to a contract are the judges of the adequacy of the consideration. 'The slightest consideration is sufficient to support the most onerous obligation, the inadequacy, ... is for the parties to consider at the time of making the agreement, not for the court when it is sought to be enforced.'" Hejl v. Hood, Hargett & Associates, Inc., 196 N.C.App. 299, 305, 674 S.E.2d 425 (2009), quoting Machinery Co. v. Insurance Co., 13 N.C.App. 85, 90-91, 185 S.E.2d 308 (1971), disc. rev. denied, 280 N.C. 302, 186 S.E.2d 176 (1972) (other citations omitted). Where the "parties have dealt at arms length and contracted, the Court cannot relieve one of them because the contract has proven to be a hard one." Bald Head Island Utils., Inc. v. Village of Bald Head Island, 165 N.C.App. 701, 704, 599 S.E.2d 98 (2004) (citation omitted).

Moreover, when parties to a dispute resolve their differences such resolution is per se supported by adequate consideration.

The rule is established that an agreement to compromise and

settle disputed matters is valid and binding. The law favors the avoidance or adjustment of litigation, and a compromise made in good faith for such purpose will be sustained as not only based upon a sufficient consideration but upon the highest consideration of public policy as well.

Hardin v. KCS International, Inc., 199 N.C. App. 687, 703, 682 S.E.2d 726, 737 (2009), quoting York v. Westall, 143, N.C. 276, 279, 55 S.E. 724, 725 (1906).

Duncan testified in his deposition that he had "[t]o either get [FAS] clear title to [N501SS] or pay [FAS] the money." [Doc. 24-3, at 2]. He also testified that he thought the terms of the Promissory Note were fair and that he understood what he was doing. [Id., at 6]. When asked what Duncan received in exchange for signing the Promissory Note, he stated that it was an agreement between "the two of us because I couldn't give him title to an airplane I had sold him." [Doc. 35-3, at 8]. Duncan began making payment on the note by transferring title to the two cars and the boat. [Id.]. Duncan believes those items were worth $300,000.00 and sought a credit in that amount against the balance due on the note. [Doc. 24-3, at 5]. He does not dispute the validity of the note but seeks a credit and he also believes the balance due thereon should be offset by the amount FAS purportedly owes Dove Air as set out in the claims pleaded in the Complaint. [Id.].

On the forecast of evidence before the Court a defense of failure of

consideration is wholly inapplicable.  For these reasons, the Court concludes as a matter of law that there is no genuine issue as to any material fact concerning whether there was a failure of consideration which negates Dove Air's and Duncan's obligations on the Promissory Note and their liability thereon cannot be avoided on that ground.

### D. Amount of the Debt on the Promissory Note

Other than the defenses addressed above, Dove Air and Duncan defend the claim on the Promissory Note only the ground that the claims they assert in the Complaint should serve to off set the claim on the Note. [Doc. 30 at 12-13, Doc. 35-3 at 9].  Summary judgment as to those claims, however, is being granted in favor of FAS, as set out herein.  Therefore, FAS is entitled to summary judgment as to the issue of Dove Air's and Duncan's liability on the Promissory Note.

Dove Air and Duncan assert that they are entitled to a $300,000 credit against the amount owed on the Note for the boat and two automobiles transferred to FAS in part payment thereon.  FAS does not dispute this credit or its amount. [Doc. 24 at 9-10].  Therefore, the Court concludes as a matter of law that the amount due on the Note is as follows:

Original Face Amount            $      850,000

Credit for Boat and Cars            < 300,000 >

"Foregone Interest" per ¶5 of Note[9]          40,555

Total                                        590,555

In addition, FAS is entitled to additional interest on the Note from the date of the claim of default through the date of the entry of the Judgment in this case at the contract rate of six percent.  Whether FAS is entitled to attorneys fees for its collection efforts on the Note is not presently before the Court in that no motion for fees has been made at this time.


### III.  DOVE AIR'S AND DUNCAN'S MOTIONS FOR SUMMARY JUDGMENT ON FAS's OTHER COUNTERCLAIMS.

### A. Promissory Note

Dove Air's and Duncan's arguments that they are entitled to summary judgment on FAS's claim on the Promissory Note are addressed above, and for the reasons stated their motions are denied as to that claim.

### B.     The claim for breach of the covenant of good faith and fair dealing.

In Count Two of the Counterclaim and the Third Party Complaint FAS alleges a claim for breach of the covenant of good faith and fair dealing because Dove Air and Duncan initially brought this claim against FAS and O'Brien in North Carolina state court contrary to the terms of the Settlement

---

[9] This interest factor was not contested by Dove Air or Duncan.

Term Sheet entered into by the parties in March 2009. The Settlement Term Sheet contains a provision that any litigation between the parties must be brought in the United States District Court for the Western District of North Carolina. [Doc. 22-7, at 2]. Based on that language, FAS asserted this claim. It is also alleged that in the state court complaint, Dove Air and Duncan made false statements about the Defendants' conduct.

Duncan first points out that he is not named as a plaintiff on the state court complaint and was not a party to any action that was in state court. Based on this, FAS acknowledges that Duncan is entitled to summary judgment as to this Count. [Doc. 38 at 2].

As previously discussed in this opinion, although "the covenant of good faith and fair dealing is implied in a contract, a claim for breach of that covenant typically is 'part and parcel' of a claim for breach of contract." Ada Liss Group (2003) v. Sara Lee Corp., 2009 WL 3241821 **13, Thomas, Lord of Shalford, 127 F.Supp.2d at 787. FAS did not allege that Dove Air breached the agreement as set out in the Settlement Term Sheet by bringing the state court action; it alleged instead the breach of an implied covenant of good faith and fair dealing in connection with that contract. Id. Just as the Court has refused to allow Dove Air to amend its Complaint through an argument made in response to a motion for summary judgment, it will not allow FAS to do so.

There is no claim for breach of the contract and thus, no claim for breach of the implied covenant of good faith and fair dealing. <u>Ada Liss Group v. Sara Lee Corp</u>., 2010 WL 3910433 ("North Carolina courts ... do not consider breach of good faith claims independently from breach of contract claims unless there is a special relationship between the parties.").

Moreover, FAS received the benefit of its bargain as to any agreement as to where any dispute between the parties would be adjudicated. Dove Air filed this action in state court, but FAS removed it to this Court - precisely where the parties agreed to litigate the matter in the Settlement Term Sheet. [Doc. 1].

As for the portion of this claim wherein FAS argues that Dove Air made false allegations in the state court complaint, FAS provides no explanation as to how this violates the covenant of good faith. Asserting that the claims in a complaint are without merit is a *defense*. FAS, however, seeks to turn that defense into a *claim* for breach of good faith. If such a claim were allowed, the defense of every contract action would become a counterclaim for breach of the covenant of good faith for the plaintiff having initially brought the suit. FAS presents no authority for such a novel proposition.

For these reasons, the motions for summary judgment of Dove Air and Duncan as to Count Two of the Counterclaim and Third Party Complaint will

be granted.

## C. Fraud Claim Regarding Airplane N695FA

In this Counterclaim (Count Three) FAS brings a claim couched exclusively in common law fraud alleging that Dove Air and Duncan misrepresented 1) when the airplane would be delivered and 2) whether it would have a new interior. [Doc. 38 at 12].[10]

In a case cited and relied on by both sides, the North Carolina Court of Appeals stated that "Substantial evidence of fraud consists of '(1) [f]alse representation or concealment of a material *fact,* (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.'" Ace, Inc. v. Maynard, 108 N.C.App. 241, 249, 423 S.E.2d 504 (1992), review denied 333 N.C. 574, 429 S.E.2d 567 (1993) (citations omitted) (emphasis added). Both of the representations at issue in this claim, however, are not "facts". They are promises. "An unfulfilled promise will not support an action for fraud." Gribble v. Gribble, 25 N.C. App. 366, 369, 213 S.E.2d 376, 378 (1975). The representation must be of a past or subsisting fact. FAS makes no allegation that the promises

---

[10] The allegations in the Counterclaim as to the nature of the misrepresentations was quite vague. [Doc. 5 at 9-10]. The summary judgment briefs, however, make clear that the parties understood these two alleged misrepresentations to be the gist of FAS's claim. [Doc. 33 at 15-16, Doc. 38 at 11]. Neither Dove Air nor Duncan made any motion pursuant to Rule 9(b) arguing that the allegations were insufficient.

were made without the present intent to fulfill them. Even if such an allegation had been made, there is no forecast of evidence to demonstrate a genuine issue as to the fact of whether such intent was absent at the making of the contract. Simply showing a failure to fulfill the promise is insufficient. Vincent v. Corbett, 244 N.C. 469, 94 S.E.2d 329 (1956); see also Kent v. Humphries, 50 N.C. App. 580, 275 S.E.2d 176 (1981) (defendant admitted contrary intent, but denied making the promise, held sufficient forecast of evidence to survive summary judgment).

Moreover, the promise of a new interior is belied by the terms of the agreement. The airplane was sold "as is." This bars any such claim for fraud. Ace, 108 N.C.App. 241, 423 S.E.2d 504. FAS argues that Ace does not apply because Dove Air concealed material information from FAS, citing Godfrey v. Res-Care, Inc., 165 N.C. App. 68, 598 S.E.2d 396 (2004). There was no evidence, however, of any concealment regarding the airplane's interior. By its own claims FAS acknowledges that it believed that the interior was in need of replacement (indicating that it understood the condition of the interior), but it nonetheless purchased the plane "as is".

For these reasons Dove Air's and Duncan's motions for summary judgment as to Count Three will be granted.

### D. Fraud Claim Regarding Airplane N4415W

The fraud claim regarding airplane N4415W (Count Four), however, is different. FAS alleges and presents a forecast of evidence, *inter alia*, that Dove Air represented that the aircraft was up-to-date on all inspections, but that in truth it lacked its "B" inspection as of the time of delivery. [Doc. 5 at 11, Doc. 38-2 at 4 (re: misrepresentation), Doc. 38-9 at 17-19 (re: falsity)]. Dove Air defends, arguing that the sales agreement containing the "as is" provision bars the claim. A representation about whether an aircraft has had a certain inspection, however, is not a representation about the quality of the machinery. It is a representation about whether a specific act has been undertaken and completed - i.e. the inspection of the plane. For this reason Dove Air's argument is completely inapposite to the claim made by FAS. Summary judgment as to Count Four of the Counterclaim will, therefore, be denied.

### E. Partnership Claim Regarding N202PX

in County Five FAS alleges that the parties entered into a partnership regarding the purchase of, improvement to and operation of airplane N202PX. Dove Air concedes that neither side has moved for summary judgment with regard to the partnership claims, [Doc. 40 at 12], but nonetheless seeks summary judgment as to one small part of the claim as may pertain to fraud.

Once again, Dove Air defends against the fraud on the basis of an "as is" clause in the purchase agreement. Since there was a partnership between the parties that is unchallenged for the purposes of summary judgment, there is a basis for Dove Air owing a fiduciary duty to FAS with regard to airplane N202PX. As such, if the jury believes the evidence with regard to the partnership and the breach of Dove Air's duties in that partnership, the "as is" clause would not serve to bar the claim. The defense is inapposite to the claim that has been alleged. For this reason the motion for summary judgment as to Count Five of the Counterclaim will be denied.

## F. Count Six of the Counterclaim

The parties' arguments regarding the last counterclaim appear to talk past one another.[11] Dove Air refers to the claim as "mysterious, at best." [Doc. 33 at 16]. It then argues that the claim is for "an accounting from [an] alleged partner, and that is all." [Id. at 17]. FAS responds by pointing to the deposition testimony showing that Dove Air and FAS entered into another partnership for the purpose of procuring the airplane in question, whereby FAS paid the sum of $650,000 to Dove Air, and that Dove Air has retained $300,000 of that

---

[11] The presentations of the parties on this Count are very confusing. At various points the parties make references to airplane 1159-250 and to airplane N985BB. Only in a footnote in one brief does Dove Air inform the Court that these two identification numbers refer to the same airplane. [Doc. 33 at n.14].

amount without any apparent justification therefor, in breach of its duties to its partner.  [Doc. 38 at 18-22, Doc. 38-9 at 11-15].

The burden of a party moving for summary judgment is to present a forecast of evidence that demonstrates that there is no genuine issue as to any material fact. Bouchat, 346 F.3d at 522.  Simply making commentary upon the opponent's claim does not suffice.  Dove Air has failed to meet this initial burden with regard to its motion on Count Six of the Counterclaim. Therefore the motion will be denied.

### G. Duncan's Motion for Summary Judgment

Duncan separately moves for summary judgment on the Third Party Caims against him individually.  As addressed above, summary judgment for Duncan is denied as to the claim on the Promissory Note, as he executed the Note in his individual capacity.

Regarding the fraud claim in County Four, pertaining to the "B" inspection of airplane N4415W, the forecast of evidence expressly states that Duncan was the party making the misrepresentation. [Doc. 38-2 at 4].   For this reason, Duncan's motion for summary judgment will be denied as to County Four.

Regarding Counts Two and Three, Duncan is entitled to summary judgment for the same reasons as is Dove Air, as set out above.   Regarding

Counts Five and Six, which are in substance partnership claims, FAS does not allege that Duncan was its partner - it alleges its only partner was Dove Air. [Doc. 5 at 12]. Therefore, Duncan's individual motion for summary judgment as to Counts Five and Six will be granted.

## ORDER

**IT IS, THEREFORE, ORDERED** as follows:

1.    Florida Aircraft Sales, LLC's and Mark H. O'Brien's Motion for Summary Judgment on Dove Air's Claims against Them [Doc. 21] is hereby **GRANTED**.

2.    Florida Aircraft Sales, LLC's Motion for Summary Judgment on its Claims against Dove Air, Inc. and Joseph W. Duncan on the March 17, 2009 Promissory Note [Doc. 23] is hereby **GRANTED**.

3.    Dove Air's Motion for Partial Summary Judgment on Counterclaim of Florida Aircraft Sales, LLC [Doc. 31] is hereby **GRANTED in part and DENIED in part** as follows:

     a.    summary judgment as to Counts One, Four, Five and Six of the Counterclaim and Third Party Complaint is **denied**;

     b.    summary judgment as to Counts Two and Three of the Counterclaim and Third Party Complaint is **granted**;

4.     Joseph W. Duncan's Motion for Partial Summary Judgment on Third-Party Complaint of Florida Aircraft Sales, LLC [Doc. 32] is hereby **GRANTED in part and DENIED in part** as follows:

   a.     summary judgment as to Counts One and Four of the Counterclaim and Third Party Complaint is **denied**;

   b.     summary judgment as to Counts Two, Three, Five and Six of the Counterclaim and Third Party Complaint is **granted**;

Partial judgment is not entered at this time.  Judgment as to Count I of the Counterclaim will enter as part of the final judgment in this case when all claims are disposed of.

Signed: August 9, 2011

Martin Reidinger
United States District Judge